UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THOMAS G.,

                Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

20-CV-00874-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15)

Plaintiff Thomas G.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 13) is denied, defendant's motion (Dkt. No. 14) is granted, and the case is closed.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed protectively for DIB on December 19, 2017, alleging a disability onset date of November 10, 2017.  (Administrative Transcript ["Tr."] 249-50).  The application was initially denied on May 18, 2018.  (Tr. 154-64).  Plaintiff timely filed a request for an administrative hearing.  (Tr. 181-82, 190-204).   On December 16, 2019, Administrative Law Judge ("ALJ") Stephen Cordovani held a video hearing from Buffalo, New York. Plaintiff appeared in Olean, New York with his attorney. (Tr. 122-53).  A vocational expert also testified.  The ALJ issued a decision finding Plaintiff not disabled, on January 7, 2020. (Tr. 104-21).  On May 13, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).  This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment

- 3 -

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

- 4 -

§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 10, 2017, the alleged onset date.  (Tr. 109).  At step two, the ALJ found that Plaintiff had the following medically determinable impairments:  broken ribs; a broken left hand; a concussion from a motorcycle racing accident; and depression.  (Tr. 110).  He further found that Plaintiff had no impairment or combination of impairments that significantly limited, or was expected to limit significantly, the Plaintiff's ability to perform basic work-related activities for 12 months.  (Tr. 110-16).  He concluded, therefore, that Plaintiff does not have a severe impairment or combination of impairments. *Id.*  Accordingly, the ALJ determined that Plaintiff has not been under a disability from November 10, 2017, the alleged onset date.  (Tr. 116).

IV.    *Plaintiff's Challenge*

Plaintiff argues first that the ALJ's step two finding was not supported by substantial evidence and that the case must therefore be remanded.  The Court finds this argument without merit.

It is Plaintiff's burden to show that he has a severe impairment, which is any impairment(s) that "significantly limits [his] physical or mental ability to perform basic work activities." 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1522 (basic work activities are the abilities and aptitudes necessary to do most jobs. Examples of these include (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). Plaintiff must also show that his severe impairment lasted (or is expected to last) for a continuous period of at least twelve months. *See* 20 C.F.R. § 404.1520(a)(ii) (if a claimant does not have a severe impairment that lasted, or is expected to last, for a continuous period of at least twelve months, then the claimant is not disabled).

Substantial evidence supports the ALJ's determination that Plaintiff failed to show that his impairments significantly limited his ability to perform basic work activities for a continuous period of at least twelve months from November 11, 2017, the date of his motorcycle racing accident. The assessments of State agency medical consultant Dr. D. Brauer, M.D., the observations and assessment of Plaintiff's treating sources, the objective evidence of record, and Plaintiff's own statements provide substantial evidence supporting the ALJ's determination.

Dr. Brauer reviewed the evidence of record in May 2018 and assessed that Plaintiff's impairments were not severe impairments because they should be almost, if not completely, resolved within twelve months. State agency medical consultants, such

as Dr. Brauer, are highly qualified physicians who are experts in Social Security disability evaluations, and an ALJ is entitled to rely upon their opinions. 20 C.F.R. § 404.1513a(b)(1).

Plaintiff's treating sources' observations and assessment show that Plaintiff's impairments did not significantly limit his ability to perform basic work activities for at least twelve months. For instance, on January 2, 2018, PA Hofmeister assessed that Plaintiff's broken left hand was healing well. (Tr. 533). On January 26, 2018, OT Nanna observed that Plaintiff's pinch and grip strength were improving. (Tr. 553). On January 31, 2018, Dr. Presberg, an ophthalmologist, observed that Plaintiff's visual acuity, without correction, was 20/20 in his right eye and 20/25 in his left eye. (Tr. 536, 538). Dr. Presberg further observed that a full examination of Plaintiff's eyes was unremarkable. (Tr. 536-40). On February 6, 2018, PA Hofmeister noted that Plaintiff was exercising at home, his hand was doing much better, and his rib and head injuries were improving. (Tr. 547, 550). On August 7, 2018, Dr. Sreedhan, a neurologist, observed that Plaintiff's gait was normal, he exhibited no dizziness, and demonstrated full muscle strength but for decreased grip strength in his left hand. (Tr. 563). On September 12, 2018, an attending physician at the University of Rochester's outpatient clinic observed that Plaintiff's examination findings were unremarkable. (Tr. 588).

The objective evidence of record also supports the ALJ's severity determination. On January 2, 2018, x-rays of Plaintiff's left hand revealed fractures that were in stages of healing without change in alignment. (Tr. 533). Similarly, on February 6, 2018, left hand x-rays revealed healing and stable alignment. (Tr. 547-48). On April 27, 2018, an MRI of

Plaintiff's brain was unremarkable. (Tr. 556). On May 1, 2018, the results of a lumbar puncture were unremarkable. (Tr. 559).

Plaintiff's own statements further support the ALJ's severity determination. For instance, on August 7, 2018, Plaintiff told Dr. Sreedhan that he had resumed riding his motorcycle and that medication improved his headaches. (Tr. 562, 564; *see* Tr. 143 (Plaintiff testified that he returned to riding his motorcycle by August 2018. (Tr. 143). On September 12, 2018, Plaintiff told an attending physician at the University of Rochester's outpatient clinic that he does sit-ups and push-ups. (Tr. 587). Plaintiff also told the physician that his injuries from his November 2017 motorcycle racing accident seemed to heal on their own. (Tr. 587). Moreover, on his activities of daily living questionnaire, Plaintiff reported that he took care of his dog, prepared simple meals, washed his laundry, drove his car, grocery shopped, attended medical appointments, and socialized. (Tr. 278-82). Such evidence that plaintiff is capable of engaging in many and varied activities despite allegations of severe pain is supportive of a conclusion that his alleged symptoms are not disabling. *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980).

Thus, substantial evidence of record supports the ALJ's finding that Plaintiff failed to demonstrate an impairment(s) that significantly limited his ability to perform basic work activities for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(ii).

Plaintiff's contention that the ALJ improperly evaluated Dr. Brauer's opinion is also without merit. The ALJ properly evaluated the persuasiveness of Dr. Brauer's opinion under the revised regulations that are applicable to this case, *see* 20 C.F.R. §

404.1520c(b)(2), explicitly considering the two key factors of supportability[3] and consistency.[4] (R. 116).

The ALJ determined that Dr. Brauer's opinion was persuasive because it was supported by the evidence of record up to May 16, 2018, the date of Dr. Brauer's report, and consistent with the evidence of record after May 16, 2018. (Tr. 116; *see* Tr. 160). Regarding evidence prior to May 16, 2018, PA Hofmeister noted that Plaintiff was exercising at home, his hand was doing much better, and his rib and head injuries were improving. (Tr. 533, 547, 550). Dr. Presberg observed that Plaintiff's vision was 20/20 in his right eye, 20/25 in his left eye, and, his eye examination findings were unremarkable. (Tr. 536-40). Also, left hand x-rays revealed healing and stable alignment, an MRI of the brain was unremarkable, and the results of a lumbar puncture were unremarkable. (Tr. 247-48, 556, 559). Further, Plaintiff reported fairly normal activities of daily living. (Tr. 278-82).

Dr. Brauer's opinion was consistent with evidence subsequent to May 16, 2018. For instance, in August 2018, Dr. Sreedhan observed that Plaintiff's physical examination findings were unremarkable but for some decreased grip strength in his left hand. (Tr. 563). Plaintiff told Dr. Sreedhan that he had resumed riding his motorcycle and that medication improved his headaches. (Tr. 562, 564). In September 2018, an attending physician at the University of Rochester's outpatient clinic observed that Plaintiff's

---

[3] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[4] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

examination findings were unremarkable. (Tr. 588). Plaintiff told that attending physician that he does sit-ups and push-ups and that each of his November 2017 motorcycle racing accident injuries seemed to heal on its own. (Tr. 587). Thus, substantial evidence supports the ALJ's determination that Dr. Brauer's opinion was persuasive.

Finally, throughout his brief, Plaintiff asserts that the ALJ should have weighed the evidence differently and should have found additional functional limitations. In making this assertion, however, Plaintiff overlooks the deferential standard long established by courts in reviewing administrative determinations. The Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d at 448 (emphasis in original) (citations omitted). Indeed, the question is not whether there is some evidence that supports the claimant's allegations, but whether there is substantial evidence to support the ALJ's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Thus, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

Plaintiff's further contention that the Appeals Council erred when it found that evidence he submitted directly to the Appeals Council after the date of ALJ's decision "does not show a reasonable probability that it would change the outcome of the decision" is also unavailing. Evidence submitted to the Appeals Council following the date of an ALJ's decision becomes part of the administrative record, and the Appeals Council must assess whether the evidence is new, material, and relates to the period on or before the

date of the ALJ's decision. 20 C.F.R. § 404.970(a)(5). Thus, a claimant must show that the proffered evidence is "new" and not merely cumulative of what is already in the record. Moreover, such evidence must be material, that is, both relevant and probative of the claimant's condition during the relevant period as well as presenting a reasonable possibility that it would have influenced the ALJ to decide the case differently. The Appeals Council then must evaluate the entire record including the new and material evidence submitted. 20 C.F.R. § 404.970(a); *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (citing *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996)). The submission of the new and material evidence, however, does not require the Appeals Council to grant review. Instead, the Appeals Council will grant review only if it finds that the ALJ's decision is contrary to the weight of the evidence of record. 20 C.F.R. § 404.970(a)(5).

Here, Plaintiff submitted additional treatment records from UHS Rehab and Neurology that further note his complaints of headaches, dizziness, and an inability to taste from April 2018 through January 2019. (Tr. 7-98). The additional treatment records, however, are cumulative of records that the ALJ properly considered and do not show that Plaintiff had an impairment that significantly limited his ability to perform basic work activities. The Appeals Council, therefore, considered the additional records and properly determined that they did not provide a reasonable possibility that it would have changed the ALJ's decision. (Tr. 2; *see* Tr. 561-67); *see* 20 C.F.R. § 404.970(a)(5) (the Appeals Council will grant review only when the additional evidence provides a reasonable possibility that it would change the outcome of the decision). Thus, the Appeals Council properly denied Plaintiff's request for review of the ALJ's decision.

## **CONCLUSION**

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is denied, defendant's motion for judgment on the pleadings (Dkt. No. 14) is granted denied, and the case is closed.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      November 2, 2021
            Buffalo, New York

                                        _____
                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge